JAMES GARFIELD, trustee, *vs.* CONSTANCE V. R. WHITE & others.

Suffolk.    March 7, 1950. — May 5, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Renunciation. Gift. Devise and Legacy,* Acceptance by beneficiary. *Power. Equity Pleading and Practice,* Appeal, Proceedings after rescript, Amendment. *Words,* "Personal representatives of the estate."

Dismissal of an appeal from a decree in equity entered on a petition for instructions in a Probate Court after rescript from this court was not required where it appeared that, following the rescript, an amendment to the petition was allowed by the Probate Court raising new issues of law and fact upon which the decree appealed from was based.

An appointee under a power of appointment may renounce or disclaim the appointment, but, to be effective, such renunciation or disclaimer must be clear and unequivocal.

A purported document of election by a grandson to take directly from his grandfather under an indenture of trust of his grandfather rather than by virtue of an appointment made to him by the will of his father under a power created by such indenture could not be pronounced clear and unequivocal where another document coincidentally executed by him conditionally qualified the election to the point of full retraction.

PETITION in equity, filed in the Probate Court for the county of Suffolk on February 14, 1945, and, after rescript from this court, amended as stated in the opinion.

The case was heard by *Dillon,* J.

*R. Wait,* for the appellants.

*F. T. Doyle,* (*R. S. McCabe* with him,) for the appellees.

WILKINS, J. After rescript in *Garfield* v. *State Street Trust Co.* 320 Mass. 646, and on February 18, 1947, the petition for instructions by the trustee under the indenture of trust of William S. Dexter, dated April 12, 1898, was amended in respects hereinafter set forth, and a prayer was added "That the court instruct your petitioner as to his duty in respect to the distribution of that portion of the principal, which is distributable to those taking by, through, or under . . . Philip Dexter, and as to income thereon accrued since the date of the death of . . . Rose L. Dexter," when the trust terminated.[1] Also on February 18, 1947, and after allowance of the amendment, a decree was entered instructing the trustee (1) to pay net income accrued or received up to the death of Rose, one third to the administrators with the will annexed of the goods not already administered of the estate of Evangeline Hope Dexter, widow of the donor's son, George T. Dexter, one third to the administrator with the will annexed of the estate of Rose, and

---

[1] The trust, naming the donor's four children, Elsie, George T., Rose L., and Philip, was to continue until the death of the survivor. The share of any child who died unmarried and without issue was to be added to the remaining shares, and the share of any child who died leaving a spouse or issue was to go as such child should by will appoint, and in default of appointment "to such persons and in such proportions [*sic*] as would have taken it if the person so failing to appoint had owned the same property at the time of his or her decease and had died intestate immediately after such last survivor." For a fuller quotation, see 320 Mass. 646, 648–649.

one third to the trustees under the will of William Dexter, the son of Philip; (2) to pay one half the principal and one half the income accrued or received since the death of Rose to the administrators with the will annexed of the goods not already administered of the estate of Evangeline; and (3) to pay costs and expenses from that one half of the principal. No appeal was taken, and so ended the issues stated in the earlier opinion (page 649) to be there "presented for determination," namely, "whether the donor's son George T. Dexter duly exercised the power of appointment given him by the terms of the indenture (a) as to income, and (b) as to principal, and whether his widow, Evangeline, effectively exercised the power of appointment given her by his will." These issues all had to do with the share of George.

The prayers of the petition before amendment were for instructions as to "a. Distribution of the net income from the trust fund during the continuance of the trust, and b. Distribution of the principal thereof at the termination of the trust." In the earlier opinion it was said (page 657), "We conclude that upon the death of Evangeline and until the death of Rose L. Dexter the income from the trust fund under the indenture became payable one third to the personal representatives of the estate of Evangeline, one third to the personal representatives of the estate of William Dexter, and one third to Rose L. Dexter, and that upon the death of Rose the principal trust fund became payable and is now payable one half to the personal representatives of the estate of William Dexter, and the remaining one half to the personal representatives of the estate of Evangeline Hope Dexter." The term "personal representatives of the estate" means executors or administrators, not trustees. *Wason* v. *Colburn*, 99 Mass. 342, 344. *Brown* v. *Boston & Maine Railroad*, 283 Mass. 192, 195. *Briggs* v. *Walker*, 171 U. S. 466, 471–472. *O'Neill* v. *Cunard White Star Ltd.* 69 Fed. Sup. 943, 945 (D. C. S. D. N. Y.). See *Cox* v. *Curwen*, 118 Mass. 198, 200; *Commissioner of Corporations & Taxation* v. *Second National Bank*, 308 Mass. 1, 8; *Bornbaum* v.

*Employers' Liability Assurance Corp. Ltd.* 311 Mass. 282, 284–285. The only other reference to the share of Philip in the earlier opinion, contained in a footnote to a sentence giving the names of Philip's wife, son, and grandchildren, was: "Philip validly exercised his power of appointment under the trust indenture so far as now material, in favor of his son William" (page 649).[1]

The decree of February 18, 1947, did not instruct as to the distribution of Philip's share of the principal. Philip died on July 25, 1934, survived by his wife, Edith W. Dexter, who died on February 17, 1942; one son, William, who died on February 8, 1943; and four grandchildren (the children of William), Constance V. R., Nathaniel, Philip, and Mary Ann. On February 1, 1949, the matter of instructions as to the distribution of Philip's share, consisting of the other one half of the principal, was heard upon the pleadings and a stipulation as to certain facts. The present appeal is from a decree of March 8, 1949, instructing the trustee "To pay that portion of the principal which is distributable to those taking by, through, or under said Philip Dexter, with the income accrued thereon since the date of the death of said Rose L. Dexter, to Richard C. Curtis and Franklin Dexter as personal representatives of the estate of William Dexter."[2] The appellants are Philip's four grand-

---

[1] Philip's will, dated December 18, 1928, included the following: "First. With respect to every trust as to any part of the capital of which I have a power of appointment, I bequeath and appoint said capital as follows: — one quarter of said capital of every such trust fund to my son, William Dexter, in fee simple, free of all trust, and three quarters of said capital to the said William Dexter upon trust, to hold, manage, invest and reinvest the same . . . and the net income thereof to pay . . . to my wife, Edith W. Dexter, during her life, and upon her death to transfer, convey and pay over the capital of the trust fund, as then existing, to himself, the said William Dexter, free and discharged of all trust. . . . Second. If at the time of my death there shall be any trust as to which I have a power of appointment, but the capital of which is not then distributable under the terms of the instrument creating said trust, I appoint one quarter of the income thereof to my said son and three quarters of said income to my said wife during her life, and after her death the whole of said income to my said son. Provided, however, that whenever the capital of any such trust shall become distributable the same shall pass under the First article of this my will and the provisions of this Second article shall cease and determine. . . ." — REPORTER.

[2] By an amendment to the petition, allowed April 13, 1945, it was alleged that Richard C. Curtis and Franklin Dexter are the executors and trustees under the will of William.

children, who are his heirs determined as of the death of Rose.

The amendment to the petition allowed on February 18, 1947, in addition to the new prayer hereinbefore referred to, struck out an allegation that Rose was living and instead alleged her death on September 17, 1946, unmarried and without issue, and the appointment of the petitioner as administrator with the will annexed.[1]

That amendment also added allegations as to documents executed by William on May 18, 1935. The original petition alleged that on that date William executed a document stating that he was the sole heir at law and next of kin of Philip; reciting that Philip by his will allowed September 4, 1934, appointed his share of the capital under the trust one quarter to William outright, and three quarters to William in trust to pay the income to Edith for life and upon her death to transfer to William free and discharged of all trust; and declaring as follows: "I . . . have elected, and by these presents do hereby confirm my election, to take directly from said William S. Dexter, under the provisions of said indenture executed April 12, 1898, the title to one quarter of the capital of that part of the trust estate . . . over which said Philip Dexter had power of appointment, instead of taking title to said one quarter of said capital under the exercise of the power . . . by said Philip Dexter in the First article of his said will; and I have elected, and by these presents do hereby confirm my election, to take upon the death of the survivor of Edith W. Dexter and my aunt, Rose L. Dexter, directly from said William S. Dexter under the provisions of said indenture executed April 12, 1898, the title to three quarters of the capital of that part of the trust estate created by said indenture over which said Philip Dexter had power of appointment, instead of then taking title thereto under the exercise of the power of appointment . . .."

---

[1] This date was subsequent to the arguments and prior to the decision in *Garfield* v. *State Street Trust Co.* 320 Mass. 646. These facts were suggested to this court in that case, and the administrator with the will annexed became a party to that earlier proceeding (page 647).

That amendment also alleged that on May 18, 1935, William executed another document reading in part as follows: "Whereas, I wish to make it clear that by said election I do not desire to waive my rights to take certain income by virtue of an appointment to me by the Second article of the will of my father, Philip Dexter, and that it is not my intention to disclaim, renounce or decline any gift under the will of my father, Philip Dexter, if the elections manifested in said instruments dated May 18, 1935, without more, would operate as a renunciation of all gifts to me, individually and as trustee, executed by the exercise of powers of appointment by the will and codicil of my father, Philip Dexter; Now, Therefore, I William Dexter, hereby declare that nothing in said instruments bearing date the 18th day of May, 1935, shall be construed as affecting my right, individually or as a trustee, to any property which I have not sought to take directly from said William S. Dexter; and I hereby declare it to be my intention to accept all gifts made to me in any capacity by the will and codicil of my father, Philip Dexter, if the election made by said instruments dated May 1935, would, but for this instrument, operate to renounce my right to any property which said will purported to give to me, individually or as trustee, by exercise of any power of appointment."

The ground upon which the appellants base their contention that they, and not those claiming under the will of William, are entitled is that William's disclaimer was effective to prevent the principal passing to him under Philip's appointment, so that, in accordance with the indenture of trust, Philip's share, at the death of Rose, the survivor, passed to them as a gift in default of appointment.

The appellees not only dispute this, but counter with the argument that the appeal should be dismissed, because the instruction given in the final decree was directed by this court and was not appealable. The earlier opinion, however, did not undertake to pass upon the effect of William's purported election to take under the indenture of trust of his grandfather. It was not one of the issues enumerated as

"presented for determination" (page 649). It was not argued by anyone. All the evidence pertinent to its consideration was not then before the court. The appellants suggest that the statement in the footnote (page 649) that, so far as material, Philip validly exercised his power of appointment refers merely to his appointment of income, which admittedly took effect. Even if it did, this suggestion does not evade the effect of the concluding statement (page 657) that one half the principal is payable to the personal representatives of the estate of William. The action of the Probate Court after rescript in allowing the amendment to the petition doubtless was taken in order to obtain a full and accurate revised finding of the facts. *Long* v. *George*, 296 Mass. 574, 577, and cases cited. This is, therefore, not a case for dismissal of the appeal. *Carilli* v. *Hersey*, 303 Mass. 82, 86.

We, accordingly, consider the merits of the respective contentions. The decree of March 8, 1949, in accordance with what we said before (page 657), ordered distribution of Philip's share to the personal representatives of William. No ground of the ruling was given, and the report of material facts found by the judge was limited to the stipulated facts. Among these are the following: On May 18, 1935, William executed the two documents above referred to, and "in or about July, 1935," as executor of Philip's estate, he filed an estate tax return with the collector of internal revenue, in which he stated that he had declined to take the property appointed in the first article of Philip's will, as he took such property in default of appointment under the indenture of trust. William accepted the appointments of income under the indenture made in the second article of Philip's will. Before the entry of the decree in the Probate Court which was the subject of the previous appeal in this court, counsel for the various persons interested under the will of Philip joined in stating to the Probate Court that, inasmuch as Rose was living, the question of what persons should take the principal of Philip's share should not then be determined, and in requesting the judge to limit his de-

cree to the devolution of property affected by the wills of George and Evangeline.[1]

No one contends that Philip's appointment of principal to William was invalid through any insufficiency of its own. The question is whether that appointment failed of operation through an effective renunciation on the part of William. As a general proposition, a donee may disclaim or renounce a gift. This rule applies to a devisee or legatee under a will (*Stebbins* v. *Lathrop*, 4 Pick. 33, 43–44; *Daley* v. *Daley*, 308 Mass. 293, 299), a grantee of a deed (*Meigs* v. *Dexter*, 172 Mass. 217, 218; *Bianco* v. *Lay*, 313 Mass. 444, 447–448; see *Silbert* v. *Equitable Life Assurance Society*, 314 Mass. 406, 408–409), or a donee of personal property. *Bailey* v. *New Bedford Institution for Savings*, 192 Mass. 564, 569. This is equally true of an appointee under a power. *Helvering* v. *Grinnell*, 294 U. S. 153. *Grinnell* v. *Commissioner of Internal Revenue*, 70 Fed. (2d) 705 (C. C. A. 2). *Matter of Lansing*, 182 N. Y. 238, 245.

A renunciation or disclaimer, however, must be clear and unequivocal. *Daley* v. *Daley*, 308 Mass. 293, 300. Page, Wills (3d ed.) §§ 1406, 1409. 57 Am. Jur., Wills, § 1571. 69 C. J. § 2168. In determining whether this requirement is met, the two documents of May 18, 1935, must be read together. *Charlestown Five Cents Savings Bank* v. *Zeff*, 275 Mass. 408, 411. *Bielanski* v. *Westfield Savings Bank*, 313 Mass. 577, 579–580. *Bigelow* v. *Lawyers Mortgage Investment Corp. of Boston*, 320 Mass. 254, 260. It is not questioned that the first document would be effective standing alone. The second is aptly described in the appellants' brief as a "hedge" instrument. The appellees argue that the second nullifies the first. However the second docu-

---

[1] The answer of the guardian ad litem then material alleged that the trustee under the indenture of trust should be instructed to pay the principal to the trustees under the will of William. The answer of the present appellants and the present appellees, both groups then represented by the same counsel, alleged that the principal should be paid "to those persons ascertained in accordance with the provisions of the said indenture of trust not including any legatee, devisee, or appointee as such named in the will of George" or Evangeline. The decree, which was reversed in 320 Mass. 646, upheld the latter position (pages 647–648).

ment may be described, it is obvious that, notwithstanding the argument of the appellees, it annexes a serious condition to the unequivocal language of the first. It not merely makes clear that the appointment of income is not renounced, but it qualifies to the point of full retraction the election to disclaim or renounce any gift under Philip's will if in law the first document was a renunciation of all such gifts. This might, as is now the case, result in a law suit to determine whether the election was effective. This cannot be pronounced a clear and unequivocal renunciation. It was without effect as a disclaimer. See *Stearns* v. *Bemis*, 185 Mass. 196. We do not rest our decision on the ground that William was obliged to accept or reject both appointments. See *Brown* v. *Routzahn*, 63 Fed. (2d) 914, 916 (C. C. A. 6); certiorari denied sub nomine *Routzahn* v. *Brown*, 290 U. S. 641. See also *Welch* v. *Morse*, 323 Mass. 233, 237. Nor do we take the ground that there was an election by William in setting up any right or claim of his own to defeat the full operation of the will. See *Hyde* v. *Baldwin*, 17 Pick. 303, 308; *Noyes* v. *Noyes*, 233 Mass. 55, 59; *Thurlow* v. *Thurlow*, 317 Mass. 126, 127–128.

The allowance of costs and expenses shall be in the discretion of the Probate Court.

*Decree affirmed.*